

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
01/19/2021

---------------------------------------------------------- x
                                                           :
In re                                                      :        Chapter 11
                                                           :
SUPERIOR ENERGY SERVICES, INC., *et al.*,                  :        Case No. 20–35812 (DRJ)
                                                           :
Debtors.[1]                                                :        (Jointly Administered)
                                                           :
---------------------------------------------------------- x        Relates to Docket No. 5

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION
FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION
ABL SECURED PARTIES, (V) MODIFYING AUTOMATIC STAY, AND
(VI)  GRANTING RELATED RELIEF**

Upon the motion, dated December 7, 2020 (the "**Motion**")[2] of Superior Energy Services,

Inc. (the "**Company**") and its affiliated debtors in the above-captioned chapter 11 cases

(collectively, the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively,

the "**Debtors**"), seeking entry of an interim order (the "**Interim Order**") and final order (this

"**Final Order**")  pursuant to sections 105, 361, 362, 363, 364(c), 364(d), 364(e), 503 and 507 of

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001,

6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Rules 2002-1, 4001-1(b), 4002-1 and 9013-1 of the Local Rules of Bankruptcy Practice and

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Superior Energy Services, Inc. (9388), SESI, L.L.C. (4124), Superior Energy Services-North America Services, Inc. (5131), Complete Energy Services, Inc. (9295), Warrior Energy Services Corporation (9424), SPN Well Services, Inc. (2682), Pumpco Energy Services, Inc. (7310), 1105 Peters Road, L.L.C. (4198), Connection Technology, L.L.C. (4128), CSI Technologies, LLC (6936), H.B. Rentals, L.C. (7291), International Snubbing Services, L.L.C. (4134), Stabil Drill Specialties, L.L.C. (4138), Superior Energy Services, L.L.C. (4196), Superior Inspection Services, L.L.C. (4991),  Wild Well Control, Inc. (3477), and Workstrings International, L.L.C. (0390).  The Debtors' address is 1001 Louisiana Street, Suite 2900, Houston, Texas 77002.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Procedure of the United States Bankruptcy Court for the Southern District of Texas, Houston Division and the Procedures for Complex Cases in the Southern District of Texas (the "**Local Rules**"), *inter alia*:

(i)     authorizing the Debtors to incur senior secured postpetition obligations on a superpriority basis in respect of a senior secured superpriority letter of credit facility in the aggregate principal amount of up to $120,000,000 (the "**DIP Facility**" and, all amounts extended under the DIP Facility, the "**DIP Loans**"), pursuant to the terms and conditions of that certain senior secured debtor-in-possession letter of credit revolving credit agreement (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**DIP Agreement**"), by and among SESI, L.L.C., as borrower (in such capacity, the "**DIP Borrower**"), the Company, as parent guarantor and each of the other Debtors party thereto as guarantors (together with the DIP Borrower and the Company, the "**Loan Parties**") and JPMorgan Chase Bank, N.A., as administrative agent and collateral agent (in such capacities, the "**DIP Agent**") for and on behalf of itself as issuing lender and the lenders and other issuing lenders party thereto from time to time (the "**DIP Lenders**" and together with the DIP Agent, the "**DIP Secured Parties**"), substantially in the form of **Exhibit A** attached to the Interim Order;

(ii)     authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements, instruments, promissory notes, security agreements, intellectual property security agreements, pledge agreements, intercreditor agreements, guarantees, fee letters and control agreements related thereto and any other Loan Documents (as defined in the DIP Agreement) and other documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time, collectively with the DIP Agreement, the "**DIP Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     authorizing the deemed replacement of up to $47,357,275 of Prepetition Letters of Credit (as defined below), which were deemed converted into, and constitute for all purposes, letters of credit outstanding under the DIP Facility (the "**DIP Letters of Credit**"), as of the Closing Date (as defined in the DIP Agreement) (the "**Interim Amount**") upon entry of the Interim Order;

(iv)     granting the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents, to the DIP Secured Parties (collectively, and including all "Obligations" as described in the DIP Agreement, the "**DIP Obligations**") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases (as defined below);

(v)     granting to the DIP Agent, for the benefit of itself and the DIP Secured Parties automatically and validly perfected security interests in and liens on all of the DIP Collateral (as defined below), including all property constituting "cash collateral"

as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which liens shall have the priorities set forth herein;

(vi)    authorizing and directing the Debtors to pay the principal, interest, premiums, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including continuing commitment fees, fronting fees, letter of credit fees, closing fees, exit fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of each of the DIP Agent's and other DIP Secured Parties' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vii)    authorizing the Debtors to use the Prepetition ABL Collateral (as defined below), including the Cash Collateral of the Prepetition ABL Secured Parties under the Prepetition ABL Documents (each as defined below), and providing adequate protection to the Prepetition ABL Secured Parties for, among other things, any diminution in value on or after the Petition Date resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition ABL Collateral, including Cash Collateral, the priming of the Prepetition ABL Secured Parties' respective interests in the Prepetition ABL Collateral (including by the Carve-Out (as defined below)) ("**Diminution in Value**") of their respective interests in the Prepetition ABL Collateral, including the Cash Collateral as contemplated hereunder; and

(viii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and the Interim Order and this Final Order.

The Court having considered the Motion, the exhibits attached thereto, the *Declaration of Westervelt T. Ballard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings*, and the *Declaration of Ryan Omohundro in Support of the Debtors' Emergency Motion for Entry of Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to Prepetition ABL Secured Parties; (V) Modifying Automatic Stay; (VI) Scheduling A Final Hearing; and (VII) Granting Related Relief,* and the evidence submitted and arguments made at the interim hearing held on December 8, 2020 (the "**Interim Hearing**"); and the Court having entered an order approving the relief requested in the Motion on an interim basis on December 8,

2020 as set forth in the Interim Order [D.I. 97]; and the Court having considered the Motion, the exhibits attached thereto, the declarations, and the evidence submitted and arguments made at the final hearing held on January 19, 2021 (the "**Final Hearing**"); and notice of the Final Hearing having been given in accordance with the Interim Order, Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the relief requested in the Motion, as granted hereby, is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement and the other DIP Documents as granted hereby is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.     **Petition Date**.  On December 7, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

B.     **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings with respect to the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  **Committee Formation**.  As of the date hereof, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases (a "**Committee**") pursuant to section 1102 of the Bankruptcy Code.

E.  **Notice**.  Notice of the Motion and the Final Hearing has been provided in accordance with the Interim Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

F.  **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest, as set forth in paragraph 31 herein, the Debtors admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(vii) (other than (v)) below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

(i)  *Prepetition ABL Facility*.  Pursuant to that certain Fifth Amended and Restated Credit Agreement, dated as of October 20, 2017 (as amended, restated, amended and restated, supplemented, waived, and/or modified from time to time, the "**Prepetition ABL Credit Agreement**" and, collectively with the Loan Documents (as defined in the Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, and/or modified from time to time,

the "**Prepetition ABL Documents**"), by and among SESI, L.L.C., as borrower (in such capacity, the "**Prepetition ABL Borrower**"), the Company, as parent, the other guarantors party thereto, JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the "**Prepetition ABL Agent**") and as an issuing lender, and the lenders and other issuing lenders party thereto from time to time (the "**Prepetition ABL Lenders**" and together with the Prepetition ABL Agent, and any affiliates of the Prepetition ABL Lenders to which secured obligations under the Prepetition ABL Credit Agreement are owed, the "**Prepetition ABL Secured Parties**"), the Prepetition ABL Secured Parties provided revolving credit loans and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrower and its subsidiaries pursuant to the Prepetition ABL Documents (the "**Prepetition ABL Facility**").

(ii)    *Prepetition ABL Obligations*. As of the Petition Date, the Prepetition ABL Borrower and the guarantors of the Prepetition ABL Facility (in such capacities, the "**Prepetition ABL Guarantors**" and, together with the Prepetition ABL Borrower, the "**Prepetition ABL Obligors**") were indebted to the Prepetition ABL Secured Parties, without defense, counterclaim, or offset of any kind, in respect of Letters of Credit (as defined in the Prepetition ABL Credit Agreement) outstanding in the face amount of $47,357,275 (the "**Prepetition Letters of Credit**"), together with accrued and unpaid interest, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fronting fees, letter of credit fees and other fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management obligations, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in

respect of any of the Prepetition ABL Borrower's or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Credit Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition ABL Obligations**").

        (iii)    *Prepetition ABL Liens and Prepetition ABL Collateral.* As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL Borrower and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, a security interest in and continuing lien on (the "**Prepetition ABL Liens**") substantially all of their assets and property (with certain exceptions set out in the Prepetition ABL Documents) including a first-priority security interest in all of their right, title and interest in, to and under all of the Collateral (as defined in that certain Guaranty and Collateral Agreement, dated as of October 20, 2017, among the Prepetition ABL Obligors and the Prepetition ABL Agent, as amended, restated, supplemented, waived, and/or modified from time to time) and all proceeds, products thereof and accessions thereto, in each case whether then owned or owing to or thereafter acquired or arising (collectively, the "**Prepetition ABL Collateral**").

        (iv)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition ABL Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens otherwise permitted by the Prepetition ABL Documents (solely to the extent

any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims by the Debtors of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, priority, and perfection of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)     *Indemnification.*  The DIP Secured Parties and the Prepetition ABL Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating,

implementing, documenting, or obtaining the approval of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the ABL Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, to the extent provided in the DIP Documents and the Prepetition ABL Documents, the DIP Secured Parties and the Prepetition ABL Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto; *provided*, that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence, fraud or willful misconduct.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph F(v), in the DIP Documents or the Prepetition ABL Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Secured Parties and the Prepetition ABL Secured Parties, as applicable.

(vi) *No Challenges/Claims*.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and

employees (in each case in such respective capacity) with respect to the Prepetition ABL Documents, the Prepetition ABL Obligations or the Prepetition ABL Liens, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

(vii)    *Releases*.   The Debtors hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the DIP Agent, the Prepetition ABL Agent, the Prepetition ABL Secured Parties, all current and future DIP Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (collectively, the "**Releasees**"), of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever relating to, as applicable, this Final Order, the DIP Facility, the DIP Documents, the Prepetition ABL Facility, the Prepetition ABL Documents, and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition ABL Secured Parties, the DIP Agent or the DIP Secured Parties; *provided*, *however*, the foregoing release shall not apply with respect to (i) the funding and other obligations of the DIP Secured Parties and the DIP Agent under the

DIP Documents and (ii) any act or omission of a Releasee that constitutes gross negligence, actual fraud or willful misconduct. The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition ABL Obligations or the DIP Obligations that the Debtors may now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court's entry of this Final Order.

G. **Cash Collateral**. All of the Debtors' cash, including any cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition ABL Collateral, constitutes or will constitute Cash Collateral of the Prepetition ABL Secured Parties and DIP Secured Parties, as applicable.

H. **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

(i) *Request for Postpetition Financing and Use of Cash Collateral*. The Debtors seek final approval of the DIP Facility, the incurrence of the DIP Obligations, and the use of Cash Collateral on a final basis on the terms described herein and in the DIP Documents, in each case, to administer their Chapter 11 Cases and fund their operations.

(ii) *Priming of the Prepetition ABL Liens*. The priming of the Prepetition ABL Liens under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as provided herein, will enable the Debtors to obtain the DIP Facility and to continue to operate their business during the pendency of the Chapter 11 Cases, to the benefit of their estates and creditors. The Prepetition ABL Secured Parties are entitled to receive adequate protection as set forth in this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any Diminution in Value of their respective interests in the Prepetition ABL Collateral (including Cash Collateral).

(iii)     *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have a need to use Cash Collateral and obtain DIP Letters of Credit  pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of DIP Letters of Credit under the DIP Facility and working capital from the use of Cash Collateral, the absence of either of which would harm the Debtors, their estates, and parties-in-interest.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business, and to provide credit support to third parties, without the authorization to use Cash Collateral and to obtain extensions of credit in the form of DIP Letters of Credit.

(iv)     *No Credit Available on More Favorable Terms*.  The DIP Facility is the best source of debtor-in-possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Secured Parties on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis on better terms is not available without granting

the DIP Agent, for the benefit of itself and the other DIP Secured Parties, (1) perfected security interests in and liens on (each as provided herein) the DIP Collateral, with the priorities set forth herein; (2) superpriority claims; and (3) the other protections set forth in this Final Order.

(v)    *Use of Cash Collateral and Proceeds of the DIP Facility*.  As a condition to entry into the DIP Agreement, the extensions of credit under the DIP Facility and the authorization to use the Prepetition ABL Collateral, including Cash Collateral, the DIP Agent, the other DIP Secured Parties, and the Prepetition ABL Secured Parties require, and the Debtors have agreed, that the proceeds of the DIP Facility and the Prepetition ABL Secured Parties' Cash Collateral shall be used in a manner consistent with the terms and conditions of this Final Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances and exclusions as permitted in the DIP Documents, and as set forth in paragraphs 12 and 13 hereof, the "**Budget**"), solely for the purposes set forth in the DIP Documents and this Final Order, including (a) ongoing working capital and other general corporate purposes of the Debtors; (b) permitted payment of costs of administration of the Chapter 11 Cases, including restructuring charges arising on account of the Chapter 11 Cases, including statutory fees of the U.S. Trustee and Allowed Professional Fees (as defined in paragraph 25(a) below) and expenses of the Debtor Professionals and professionals retained by a Committee (if any), subject to the Investigation Budget Amount (as defined below); (c) payment of such prepetition expenses as consented to by the DIP Agent or otherwise permitted under the DIP Documents; (d) payment of interest, premiums, fronting fees, letter of credit fees and other fees, expenses, and other amounts (including, without limitation, legal and other professionals' fees and expenses of the DIP Agent and the other DIP Secured Parties) owed under the DIP Documents, including those incurred in connection with the

preparation, negotiation, documentation, and Court approval of the DIP Facility whether incurred before or after the Petition Date; (e) payment of certain adequate protection amounts to the Prepetition ABL Secured Parties, to the extent set forth in paragraph 11 hereof; and (f) payment of obligations arising from or related to the Carve-Out; *provided*, that none of the foregoing shall limit the payment of Allowed Professional Fees (as defined in paragraph 25(a) below) that benefit from the Carve-Out, as and when such Allowed Professional Fees are allowed by the Bankruptcy Court at any time (whether by interim order, procedural order or otherwise).

(vi)    *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility, and authorization to use Cash Collateral, the Debtors, the DIP Agent, the other DIP Secured Parties, and the Prepetition ABL Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors were and are permitted to utilize the proceeds of the DIP Collateral in accordance with the Interim Order and this Final Order, as applicable.

I.    **Adequate Protection**.  The Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, is entitled to receive adequate protection solely to the extent of any Diminution in Value of their interests in the Prepetition ABL Collateral, including, without limitation, the Cash Collateral.  Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, subject in all respects to the Carve-Out and subject to paragraph 32 of this Final Order, the Prepetition ABL Secured Parties will receive (a) current payment of interest, commitment fees and/or letter of credit fees (as applicable) as more fully set forth in paragraph 11 herein, (b) solely to the extent of any Diminution in Value of their interests in the Prepetition ABL Collateral, ABL Adequate Protection Liens (as defined below) and ABL 507(b) Claims (as defined below); (c) current payment of reasonable and documented fees and expenses and other

disbursements as set forth in paragraph 11 herein; and (d) financial and other reporting, in each case, as set forth in paragraph 11 herein.

J.       **Sections 506(c) and 552(b).**  In light of (i) the DIP Agent's and the DIP Secured Parties' agreement that their liens and superpriority claims shall be subject to the Carve-Out; (ii) the Prepetition ABL Secured Parties' agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve-Out and in certain respects subordinate to the DIP Liens (as defined below) as set forth herein; and (iii) the DIP Agent's, the other DIP Secured Parties', and the Prepetition ABL Secured Parties' agreement to the payment (in accordance with the Budget (subject to the Permitted Variances (as defined below) and exclusions set forth herein) and subject to the terms and conditions of this Final Order and the DIP Documents) of certain expenses of administration of these Chapter 11 Cases, (a) the Prepetition ABL Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b)  the DIP Agent, the other DIP Secured Parties, and the Prepetition ABL Secured Parties each are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.       **Good Faith of the DIP Agent, the DIP Secured Parties and the Prepetition ABL Secured Parties**.

(i)       Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the extension of credit under the DIP Facility is fair and reasonable, is appropriate for secured financing to debtors in possession, is the best available to the Debtors under the circumstances, reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and fair consideration; (ii) the terms and conditions of the DIP Facility and the use of the Cash Collateral have been negotiated

in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition ABL Secured Parties with the assistance and counsel of their respective advisors; (iii) the use of Cash Collateral, including, without limitation, pursuant to the Interim Order and this Final Order, has been allowed in "good faith" within the meaning of section 364(e) of the Bankruptcy Code; (iv) any credit extended or other financial accommodations extended or to be extended to the Debtors by the DIP Secured Parties and the Prepetition ABL Secured Parties, including, without limitation, pursuant to the Interim Order and this Final Order, have been allowed, advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code by the DIP Secured Parties and the Prepetition ABL Secured Parties in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code; and (v) the DIP Facility, the DIP Liens (as defined below), the DIP Superpriority Claims (as defined below), the ABL Adequate Protection Liens (as defined below), and the ABL 507(b) Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(ii)      Absent an order of this Court and the provision of Adequate Protection Obligations and ABL Adequate Protection Liens (each as defined below), consent of the Prepetition ABL Secured Parties is required for the Debtors' use of Cash Collateral and other Prepetition ABL Collateral.  The Prepetition ABL Secured Parties have consented, or are deemed pursuant to the Prepetition ABL Documents to have consented, or have not objected, to the Debtors' use of Cash Collateral and other Prepetition ABL Collateral and to the Debtors' entry into the DIP Documents in accordance with and subject to the terms and conditions in the Interim Order, this Final Order and the DIP Documents.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      <u>DIP Facility Approved on Final Basis</u>.  The Motion is granted on a final basis as set forth herein.  The DIP Facility is hereby authorized and approved, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Final Order.  All objections to this Final Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled.  This Final Order shall become effective immediately upon its entry.

2.      <u>Authorization of the DIP Facility</u>.  The DIP Facility is hereby approved as set forth herein.  The Debtors' prior execution and delivery of, and continued performance under, the DIP Facilities is hereby approved on a final basis.  The Debtors are expressly and immediately authorized and empowered on a final basis to incur the DIP Obligations and continue to perform under the DIP Facility in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined below).  The Debtors shall pay, in accordance with this Final Order, the principal, interest, premiums, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and payable, without need to obtain further Court approval, whether or not such fees arose before, on, or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves, and to take any other actions that may be necessary or appropriate, all as provided in this

Final Order or the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Final Order and the DIP Documents. The DIP Documents represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.  Upon (i) entry of the Interim Order, the "DIP Upfront Fees" and the "DIP Arrangement Fee" (as defined in that certain amended and restated engagement letter between SESI, L.L.C. and JPMorgan Chase Bank, N.A., dated as of December 1, 2020 (as amended, restated, supplemented, waived, and/or modified from time to time, the "**Engagement Letter**")) and (ii) the Closing Date (as defined in the DIP Agreement), the administration fee (as defined in that certain fee letter between SESI, L.L.C. and JPMorgan Chase Bank, N.A., (as amended, restated, supplemented, waived, and/or modified from time to time, the "**DIP Fee Letter**")) (the fees in (i) and (ii) collectively, the "**ABL Fees**") were fully earned and non-refundable and were paid in accordance with and at the times specified in the Engagement Letter and the DIP Fee Letter.  The Debtors shall pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, and as applicable, closing, arrangement, commitment and exit fees (including the ABL Fees and all fees and other amounts owed to the DIP Secured Parties), administrative agent's fees and collateral agent's fees (including all fees and other amounts owed to the DIP Agent), the reasonable fees and disbursements of the DIP Secured Parties, including the reasonable fees and disbursements of counsel and other professionals, whether or not such fees arose before, on, and after the Petition Date, in accordance with this Final Order or the DIP Documents.

3.     <u>Authorization to Request DIP Letters of Credit</u>.  From the entry of this Final Order through and including the DIP Termination Date (as defined below), and subject to the terms, conditions, and limitations on availability set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized to request issuances, extensions and renewals of DIP Letters of Credit (including the deemed issuance of Prepetition Letters of Credit as DIP Letters of Credit).

4.     <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is non-material and in accordance with the DIP Documents.   In the case of a material amendment, modification, or supplement to the DIP Documents, the Debtors shall (i) provide notice (which may be provided through electronic mail or facsimile) to counsel to any Committee (if appointed), the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the DIP Secured Parties and counsel to that certain ad hoc group of holders of Prepetition Senior Notes (the "**Ad Hoc Noteholder Group**"), (a) Davis Polk and Wardwell LLP (Attn: Damian S. Schaible and Adam L. Shpeen) and (b) Porter Hedges LLP (John F. Higgins and Eric M. English); (ii) provide notice to the Court; and (iii) obtain approval of the Court.  For the avoidance of doubt, the extension of a Milestone (as defined in the DIP Agreement) shall not constitute a material amendment, modification, or supplement to the DIP Documents.

5.     <u>DIP Obligations</u>.

(a)     The DIP Documents, the Interim Order, and this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or

related to any of the foregoing (collectively, the "**Successor Cases**").  Upon entry of the Interim Order, the DIP Obligations included all loans and any other indebtedness or obligations, contingent or absolute, which were then or from time to time are owing by any of the Debtors to the DIP Agent or any of the DIP Secured Parties, in each case, under the DIP Documents, the Interim Order or this Final Order or secured by the DIP Liens (as defined below), including, without limitation, all principal, accrued and unpaid interest, costs, fees, expenses, and other amounts owing under the DIP Documents.  The Debtors are and shall remain jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, and the use of Cash Collateral shall automatically cease, in each case, without notice or demand on the DIP Termination Date, except as provided in paragraph 21 herein and subject to the requirements of the Carve-Out.   No obligation, payment, transfer, or grant of collateral security under the Interim Order, this Final Order, or the DIP Documents (including any DIP Obligation or DIP Liens (as defined below) but excluding any adequate protection provided to the Prepetition ABL Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other provision with respect to avoidance actions (such actions, "**Avoidance Actions**") under the Bankruptcy Code or applicable state law equivalents or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise, but other than to the Carve-Out), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(b)     Upon the closing of the DIP Facility, all Prepetition Letters of Credit outstanding on the Petition Date were deemed issued and outstanding DIP Letters of Credit, and

all Obligations (as defined in the Prepetition ABL Credit Agreement) in respect thereof, were deemed "Obligations" under the DIP Agreement, and such letters of credit no longer constitute "Obligations" under the Prepetition ABL Facility, and the Prepetition ABL Lenders have no liability (including to each other and/or any of the Prepetition ABL Secured Parties) under the Prepetition ABL Credit Agreement with respect to such Prepetition Letters of Credit or DIP Letters of Credit (including in respect of any reimbursement or indemnification obligations).

(c)     Upon the closing of the DIP Facility, all existing bank services obligations constituting "Specified Cash Management Obligations" (as defined in the Prepetition ABL Credit Agreement) outstanding on the Petition Date were deemed Specified Cash Management Obligations under the DIP Agreement.  All existing bank services constituting "Specified Cash Management Obligations" (as defined in the Prepetition ABL Credit Agreement), which services are continued by order of the Court entered contemporaneously with the Interim Order, were deemed Specified Cash Management Obligations under the DIP Agreement.

6.     DIP Liens.  As security for the DIP Obligations, effective and perfected upon the date of the Interim Order, and as ratified by this Final Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent or any other DIP Secured Party of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clause (a) and (b) below being collectively referred to as the "**DIP Collateral**"), *provided* that the DIP Collateral shall not include (and the DIP Liens (as defined below) shall not extend to) any "**Excluded**

**Assets**"4), subject to (x) other valid, perfected, senior, enforceable, and unavoidable liens perfected

prior to the Petition Date or perfected after the Petition Date pursuant to Section 546(b) of the

Bankruptcy Code and (y) the Carve-Out (all such liens and security interests granted to the DIP

Agent, for the benefit of the DIP Lenders, pursuant to the Interim Order, this Final Order and the

DIP Facility Documents, the "**DIP Liens**"):

> (a) <u>First Priority Lien On Any Unencumbered Property</u>. Pursuant to

section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-

avoidable, and automatically, fully and properly perfected first priority senior security interest in,

---

4    "**Excluded Assets**" shall mean (a) any permit, lease, license, contract or agreement to which any Debtor is a party or any of its rights or interests thereunder to the extent that the grant of a security interest hereunder (i) is prohibited by or a violation of any law, rule or regulation applicable to such Debtor or (ii) shall constitute or result in a breach of a term or provision of, or the termination of or a default under the terms of, such permit, lease, license, contract or agreement, (b) property owned by any Debtor that is subject to a purchase money Lien or Capitalized Lease permitted under the DIP Agreement if the agreement pursuant to which such Lien is granted (or the document providing for such Capitalized Lease) prohibits, or requires the consent of any Person other than the Debtors which has not been obtained as a condition to the creation of any other Lien on such property; <u>provided further</u> that the exclusions referred to in clauses (a) and (b) of this definition shall not include any Proceeds (as defined in the UCC) of such permit, lease, license, contract or agreement or property; (c) any "intent-to-use" application for registration of a trademark filed pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051, prior to the filing of a "Statement of Use" pursuant to Section 1(d) of the Lanham Act or an "Amendment to Allege Use" pursuant to Section 1(c) of the Lanham Act with respect thereto, solely to the extent, if any, that, and solely during the period, if any, in which, the grant of a security interest therein would impair the validity or enforceability of any registration that issues from such intent-to-use application under applicable federal law, (d) Equity Interests in any Subsidiary of any Debtor (other than a Wholly-Owned Subsidiary) acquired after the Closing Date to the extent the grant of a security interest pursuant to the Interim Order or this Final Order is prohibited by the terms of the organization documents or any joint venture agreement of such Subsidiary and such prohibition (i) existed at the time such Subsidiary was acquired and (ii) was not created in anticipation or contemplation thereof (e) vehicles (which includes cars, trucks, forklifts and other vehicles covered by a certificate of title under the law of any state and all tires and other appurtenances to any of the foregoing), vessels, aircraft, tractors, trailers, other rolling stock and any other similar mobile goods or serial numbered goods (including, without limitation, accessories, superstructures and racks) and any assets otherwise subject to certificates of title, (f) any insurance proceeds to the extent not related to any DIP Collateral (g) Equity Interests of any Subsidiary not required to be pledged pursuant to Section 2.18(a) or Section 2.18(d) of the DIP Agreement, (h) Equity Interests of any Domestic Subsidiary (including disregarded entity for U.S. federal income tax purposes) substantially all of whose assets consist of Equity Interests and/or Indebtedness of one or more Foreign Subsidiaries that are "controlled foreign corporation" within the meaning of Section 957 of the Code held directly or through Subsidiaries and (i) any Security Entitlements (as defined in the UCC) to the extent not relating to any DIP Collateral. Capitalized terms used in this definition shall have the meaning assigned to such terms in the DIP Agreement.

and lien upon, all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)), including any unencumbered cash of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash, cash equivalents, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, real property leaseholds, proceeds of any sale of and rents from real property, deposit accounts, commercial tort claims, securities accounts, investment property, letter-of-credit rights, supporting obligations, machinery and equipment (excluding vehicles, vessels, aircraft, tractors, trailers, other rolling stock and any other similar mobile goods or serial numbered good and any assets otherwise subject to certificates of title), leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of SESI, L.L.C. and its domestic subsidiaries, and a 66% equity pledge of any first-tier foreign subsidiaries of each Debtor, money, intercompany claims, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred prior to, on, or following the Petition Date (but excluding all Avoidance Actions), all products and proceeds of the foregoing and all proceeds and property recovered in respect of Avoidance Actions; *provided*, for the avoidance of doubt and notwithstanding anything to the contrary contained herein, with respect to non-residential leases of real property, unless the applicable lease expressly permits the granting of liens on such lease, the liens granted pursuant to the Interim Order and this Final Order attach solely to the proceeds of such lease and not to the subject lease itself; *provided*, *further*, that notwithstanding anything to the contrary contained

herein, the DIP Collateral shall not include (and the DIP Liens shall not extend to) owned real property.

(b)    Liens Priming the Prepetition ABL Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, and automatically, properly and fully perfected first priority senior priming security interest in and lien upon all property of the Debtors that was subject to the Prepetition ABL Liens including, without limitation, the Prepetition ABL Collateral and Cash Collateral; *provided* that such liens shall be immediately junior to the Carve-Out and any valid, perfected, and unavoidable liens, if any, existing as of the Petition Date or perfected after the Petition Date pursuant to Section 546(b) of the Bankruptcy Code that are senior in priority to the Prepetition ABL Liens of the Prepetition ABL Secured Parties; *provided*, *further*, for the avoidance of doubt and notwithstanding anything to the contrary contained herein, with respect to non-residential leases of real property, unless the applicable lease expressly permits the granting of liens on such lease, the liens granted pursuant to the Interim Order and this Final Order attach solely to the proceeds of such lease and not to the subject lease itself.

(c)    Liens Junior to Preexisting Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, and automatically, properly and fully perfected first priority junior security interest in and lien upon all other property of the Debtors, if any, that on or as of the Petition Date is subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)); *provided*, for the avoidance of doubt and notwithstanding anything to the contrary contained herein, with respect to non-residential leases of real property, unless the applicable lease expressly permits the granting of liens on such lease, the liens granted pursuant to the Interim

Order and this Final Order attach solely to the proceeds of such lease and not to the subject lease itself.

(d)  No Subordination.  Other than as set forth herein (including with respect to the Carve-Out) or permitted under the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to any Successor Case, and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The DIP Liens shall not be subject to any of sections 510, 549 or 550 of the Bankruptcy Code (subject to the Challenge Deadline and related provisions set forth in paragraph 31 herein). No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.  Superpriority Claims.  Subject and subordinate to the Carve-Out, upon entry of the Interim Order, and as ratified by this Final Order, the DIP Agent, on its own behalf and on behalf of the DIP Secured Parties, is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "**DIP Superpriority Claims**") for all DIP Obligations (a) with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code or any other provision of the Bankruptcy Code and (b) which shall at all times be senior to the rights of the

Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; *provided* that such DIP Superpriority Claims shall not attach to Avoidance Actions (but shall attach to the proceed thereof) and the granting of such DIP Superiority Claims shall not affect the timing or scope of the waiver of the provisions of Section 506(c) of the Bankruptcy Code set forth herein.

8.     <u>No Obligation to Extend Credit</u>.  The DIP Secured Parties shall have no obligation to make any loan or advance or to issue, amend, renew, or extend any DIP Letters of Credit unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such DIP Letter of Credit and this Final Order have been satisfied in full or waived by the DIP Agent in accordance with the terms of the DIP Agreement.

9.     <u>Use of Proceeds of DIP Facility</u>.  The Debtors shall use proceeds of credit extensions under the DIP Facility only for the purposes specifically set forth in this Final Order and the DIP Documents and in compliance with the Budget (subject to any variances permitted by section 6.17(b) of the DIP Credit Agreement (the "**Permitted Variances**") and the exclusions set forth herein) and the terms and conditions in this Final Order and the DIP Documents; *provided*, that none of the foregoing shall limit the payment of Allowed Professional Fees (as defined in paragraph 25(a) below) that benefit from the Carve-Out, as and when such Allowed Professional Fees are allowed by the Bankruptcy Court at any time (whether by interim order, procedural order or otherwise).

10.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order (including paragraph 24 hereof) and the DIP Documents, and in accordance with the Budget (subject to the Permitted Variances and the exclusions set forth herein), the Debtors are authorized to use Cash Collateral until the DIP Termination Date.  Nothing in this Final Order

shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including with respect to the Carve-Out), the DIP Facility, the DIP Documents, or by an order of the Court, and in accordance with the Budget (subject to the Permitted Variances and the exclusions set forth herein).

11.     <u>Adequate Protection for the Prepetition ABL Secured Parties</u>.   Subject to the Investigation (as defined below), and to the extent any Prepetition ABL Obligations (including any contingent obligations for which no claim has yet been asserted) remain outstanding after giving effect to paragraph 5(b) and 5(c) hereof, the Prepetition ABL Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition ABL Collateral, including the Cash Collateral, solely to the extent of any Diminution in Value of their interests in the Prepetition ABL Collateral (the "**ABL Adequate Protection Obligations**").  As adequate protection, the Prepetition ABL Secured Parties are hereby granted the following:

(a)     <u>ABL Adequate Protection Liens</u>.  As security for the payment of the ABL Adequate Protection Obligations, the Prepetition ABL Agent (for itself and for the benefit of the Prepetition ABL Secured Parties) is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and lien on all DIP Collateral, including the proceeds of any Avoidance Actions (the "**ABL Adequate Protection Liens**"), subject and subordinate only to (i) the Carve-Out, (ii) the DIP Liens and (iii) the Prepetition ABL Liens;

(b)      ABL Section 507(b) Claims.  The ABL Adequate Protection Obligations shall constitute superpriority claims in each of the Chapter 11 Cases as provided in section 507(b) of the Bankruptcy Code (the "**ABL 507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and (ii) the DIP Superiority Claims.  Except to the extent expressly set forth in this Final Order, the Prepetition ABL Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the ABL 507(b) Claims unless and until the Carve-Out is funded and all DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility (both as defined in paragraph 45 hereof) shall have indefeasibly been paid in full in cash.

(c)      ABL Adequate Protection Payments.  The Debtors shall pay, as adequate protection, in the form of payment in cash (i) to the Prepetition ABL Agent on behalf of the Prepetition ABL Secured Parties, solely to the extent that any Prepetition ABL Obligations (other than any contingent obligations for which no claim has been asserted and Prepetition Letters of Credit deemed converted into DIP Letters of Credit under the DIP Facility) remain outstanding after entry of this Final Order, interest (at the non-default rate) due under the Prepetition ABL Documents and (ii) all accrued and unpaid fees and reasonable and documented disbursements, including professional fees, incurred by the Prepetition ABL Agent or the Prepetition ABL Secured Parties, whether accrued before, on, or after the Petition Date, including, without limitation, the reasonable and documented fees and expenses of Simpson Thacher & Bartlett LLP

("**Simpson Thacher**"), as counsel to the Prepetition ABL Agent, and FTI Consulting, Inc. ("**FTI**"), as financial advisor to the Prepetition ABL Agent. The foregoing payments of interest pursuant to this subparagraph 11(c) shall be subject to potential recharacterization as payments in respect of principal pursuant to paragraph 29 hereof, and the foregoing payment of fees, costs, and expenses pursuant to this subparagraph 11(c) shall be subject to the notice and objection procedures set forth in paragraph 28 hereof.

(d)     Information. The Debtors shall concurrently deliver to the Prepetition ABL Agent and their respective legal and financial advisors and to the Ad Hoc Noteholder Group Advisors (as defined below) all information, reports, documents, and other materials that the Debtors provide to the DIP Secured Parties pursuant to the DIP Documents, and this Final Order.

(e)     Adequate Protection Reservation. Subject to the Carve-Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition ABL Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition ABL Collateral during the Chapter 11 Cases or any Successor Cases. The receipt by the Prepetition ABL Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition ABL Secured Parties are adequately protected. Further, this Final Order shall not prejudice or limit the rights of the Prepetition ABL Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, or the rights of any party in interest to contest any additional relief sought.

12.     Budget Maintenance. The Debtors shall use the proceeds of all borrowings under the DIP Facility and Cash Collateral in accordance with the Budget, subject in all respects to the Permitted Variances and exclusions set forth herein; *provided*, that none of the foregoing shall

limit the payment of Allowed Professional Fees (as defined in paragraph 25(a) below) that benefit from the Carve-Out, as and when such Allowed Professional Fees are allowed by the Bankruptcy Court at any time (whether by interim order, procedural order or otherwise). The Budget annexed as **Schedule 1** to the Interim Order constituted the initial Budget. On the first Thursday of the third full calendar week after the Petition Date, and on the Thursday of each fourth week thereafter, the Debtors have provided and shall provide to the DIP Agent and other DIP Secured Parties (a) an updated proposed rolling 13-week statement of the Debtors' anticipated cash receipts and disbursements for the subsequent 13-week period (a "**Proposed Budget**"), which Proposed Budget shall modify and supersede any prior Budget on the Thursday of the week following the delivery of any Proposed Budget, unless prior to such date the DIP Agent, at the direction of the Required Lenders, notifies the Debtors in writing (which may be by email) that such Proposed Budget is not in form and substance reasonably satisfactory to the Required Lenders. If the DIP Agent delivers such notice that such Proposed Budget is not in form and substance reasonably satisfactory to Required Lenders, the Budget then in effect shall continue as the then-effective Budget, and any or all of the DIP Secured Parties may (but shall have no obligation to) fund such Proposed Budget. Each Budget delivered to the DIP Party Advisors (as defined below) shall be accompanied by such supporting documentation as reasonably requested by the DIP Party Advisors, and each Budget shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable. A copy of the Budget shall be delivered to the legal and financial advisors to the Committee (if appointed), the Ad Hoc Noteholder Group Advisors and the U.S. Trustee following such Budget's approval.

13.     <u>Budget and Reporting Compliance</u>. The Debtors shall at all times comply with the Budget, subject to the Permitted Variances and exclusions set forth herein; *provided*, that none of

the foregoing shall limit the payment of Allowed Professional Fees (as defined in paragraph 25(a) below) that benefit from the Carve-Out, as and when such Allowed Professional Fees are allowed by the Bankruptcy Court at any time (whether by interim order, procedural order or otherwise). The Debtors shall provide all reports and other information as required in the DIP Documents. The Debtors' failure to comply with the Budget (subject to the Permitted Variances and exclusions set forth herein) or to provide the reports and other information required in the DIP Documents shall constitute an Event of Default (as defined below), following the expiration of any applicable grace period set forth in the applicable DIP Agreement.

14.    <u>Modification of Automatic Stay</u>.    The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and ABL 507(b) Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the DIP Secured Parties, or the Prepetition ABL Agent each may reasonably request to assure the perfection and priority of the liens; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Secured Parties under the DIP Documents, the DIP Facility and this Final Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order.

15.    <u>Perfection of DIP Liens and ABL Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted pursuant to the Interim Order, and hereby ratified, effective as of entry of the Interim Order, including the DIP Liens and the ABL Adequate Protection Liens, without the necessity of

filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or the ABL Adequate Protection Liens or to entitle the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition ABL Agent are authorized to file or record, as it in its sole discretion or in the discretion of the DIP Secured Parties or Prepetition ABL Secured Parties, as the case may be, deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect its respective liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the ABL Adequate Protection Liens.  The Debtors shall execute and deliver, promptly upon demand, to the DIP Agent and Prepetition ABL Agent, all such financing statements, mortgages, notices, and other documents as the DIP Agent or Prepetition ABL Agent, as applicable, may reasonably request.  Each of the DIP Agent and the Prepetition ABL Agent, in its discretion, may file a photocopy of the Interim Order and/or this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument, and all applicable officials shall accept a photocopy of the Interim Order and/or this Final Order for filing or recordation for such purpose.  To the extent the Prepetition ABL Agent is the secured party under any security agreement, mortgage, deed of trust, leasehold

mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition ABL Documents or is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party or the loss payee or additional insured, as applicable, under such documents. The Prepetition ABL Agent shall serve as gratuitous bailee for the DIP Agent for purposes of perfecting the DIP Liens on all DIP Collateral that is of a type such that, without giving effect to the Bankruptcy Code, the Interim Order, or this Final Order, perfection of a lien thereon may be accomplished only by possession or control by a secured party.

16.  <u>Protections of Rights of DIP Agent, DIP Secured Parties and Prepetition ABL Secured Parties</u>.

(a)  Unless the DIP Agent, at the direction of the Required Lenders, or the Prepetition ABL Agent shall have provided their prior written consent, or all DIP Obligations and all Prepetition ABL Obligations (in each case, excluding contingent indemnification obligations for which no claim has been asserted and Prepetition Letters of Credit deemed converted to DIP Letters of Credit under the DIP Facility, and DIP Letters of Credit converted to Exit Letters of Credit under the Exit Facility) have been indefeasibly paid in full in cash, as applicable, and the lending commitments under the DIP Facility have terminated, it shall be an Event of Default if there shall be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following (unless such order provides for the simultaneous satisfaction of such obligations): (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or the Prepetition ABL Collateral or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with

the DIP Liens, the DIP Superpriority Claims, the Prepetition ABL Liens, the ABL Adequate Protection Liens, or the ABL 507(b) Claims, except as expressly set forth in this Final Order, the DIP Documents or a subsequent order of this Court; (ii) the use of Cash Collateral for any purpose other than to fund the Carve-Out or as permitted in the Budget (subject to the Permitted Variances and exclusions set forth herein), the DIP Documents and this Final Order; or (iii) any modification of any DIP Agent's, any DIP Secured Party's or any Prepetition ABL Secured Party's rights under this Final Order, the DIP Documents or the Prepetition ABL Documents with respect any DIP Obligations or Prepetition ABL Obligations, as applicable.

(b)     The Debtors will, until the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition ABL Documents; (ii) reasonably cooperate with, consult with, and provide to the DIP Agent, the DIP Secured Parties and the Prepetition ABL Agent all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Agent, the DIP Secured Parties, or the Prepetition ABL Agent) to provide under the DIP Documents, the Prepetition ABL Documents, or the provisions of this Final Order; (iii) upon reasonable request, authorize their independent certified public accountants, financial advisors, investment bankers and consultants, to cooperate and consult with the DIP Agent (and, so long as an Event of Default has occurred and is continuing, each DIP Secured Party), the DIP Party Advisors and the Prepetition ABL Agent; (iv) upon reasonable advance notice and during normal business hours, permit the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises

and other properties, and to discuss their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition ABL Documents; (v) upon reasonable advance notice, permit the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent, and the DIP Party Advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (vi) upon reasonable advance notice, permit the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, and liquidation valuations at reasonable times in respect of any or all of the DIP Collateral or the Prepetition ABL Collateral, in accordance with the DIP Documents and the Prepetition ABL Documents.

17.    Credit Bidding.  In connection with any sale process authorized by the Court, whether effectuated through sections 363, 725, or 1123 of the Bankruptcy Code, the DIP Agent, DIP Secured Parties, and the Prepetition ABL Secured Parties may credit bid up to the full amount of the outstanding DIP Obligations or the relevant Prepetition ABL Obligations (in each case, other than any contingent obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility), as applicable, in each case including any accrued and unpaid interest, expenses, fees, and other obligations for their respective priority collateral, subject to section 363(k) of the Bankruptcy Code, and subject in each case to the priorities set forth herein.

18.    Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or

any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) of the Bankruptcy Code in violation of the DIP Documents or this Final Order at any time prior to the indefeasible repayment in full of all DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility) and the termination of the DIP Agent's and DIP Secured Parties' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any chapter 11 plan with respect to any or all of the Debtors (if applicable), then all the cash proceeds derived from such credit or debt shall immediately be applied in accordance with this Final Order and the DIP Documents.

19.     Maintenance of DIP Collateral.  Until the indefeasible payment in full of all DIP Obligations and all Prepetition ABL Obligations (in each case, excluding contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility), and the termination of the DIP Agent's and the DIP Secured Parties' obligations to extend credit under the DIP Facility, the Debtors shall (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition ABL Documents, as applicable; (b) maintain the cash management system in effect as of the Petition Date, as modified by any order entered by the Court; and (c)(i) maintain accurate records of all transfers (including intercompany transactions) within the cash management system so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date, and (ii) provide reasonable access to such records to the DIP Agent, the DIP Secured Parties and the DIP Party Advisors.

20. <u>Disposition of DIP Collateral</u>. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent and the Prepetition ABL Agent (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Agent, DIP Secured Parties, or the Prepetition ABL Secured Parties), except as otherwise provided for in the DIP Documents.

21. <u>DIP Termination Date</u>. On the DIP Termination Date (as defined below), subject to the Carve-Out, (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 25 with respect to the Carve-Out; (b) all authority to use Cash Collateral shall cease, other than as required in paragraph 25 with respect to the Carve-Out; *provided, however*, that during the Remedies Notice Period (as defined in paragraph 24 below), the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates, in accordance with the Budget (subject to the Permitted Variances and exclusions set forth herein), or that have otherwise been approved in advance in writing by the DIP Agent; and (c) subject to paragraph 24, the DIP Agent shall otherwise be entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order.

22. <u>Events of Default</u>. Prior to the indefeasible payment in full in cash of the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility), the occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (collectively, the "**<u>Events of Default</u>**") under this Final Order: (a) the failure of the Debtors to

perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, subject to a three-day cure period (if such failure is capable of being cured); or (b) the occurrence of an "Event of Default" under the DIP Agreement.  Upon the indefeasible payment in full in cash of the DIP Obligations, including the cash collateralization of any DIP Letters of Credit (excluding contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility) (a "**DIP Repayment**"), the foregoing Events of Default shall be deemed waived.

23.     <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the "Milestones" (as defined in the DIP Agreement).  The failure of the Debtors to comply with any of the Milestones shall (a) constitute an Event of Default under (i) the DIP Agreement and (ii) this Final Order; (b) subject to the expiration of the Remedies Notice Period (as defined in paragraph 24 below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final Order; and (c) permit the DIP Agent, subject to the terms of paragraph 24, to exercise the rights and remedies provided for in this Final Order and the DIP Documents.

24.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order of the Court, but subject to the terms of this Final Order, (a) the DIP Agent may declare (i) all outstanding DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) the termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Secured

Parties, without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve-Out has occurred through the delivery of the Carve-Out Trigger Notice (as defined below) to the Debtors; and (b) subject to the provisions in paragraph 21, the Prepetition ABL Agent may declare the termination of the Debtors' ability to use Cash Collateral (any such declaration, a "**DIP Termination Declaration**" and the date on which a DIP Termination Declaration is delivered, the "**DIP Termination Date**").  A DIP Termination Declaration shall be delivered by electronic mail (or other electronic means) to lead counsel to the Debtors (Latham & Watkins LLP ("**Latham**")), counsel to a Committee (if appointed), counsel to the DIP Agent, counsel to the Ad Hoc Noteholder Group, counsel to the Prepetition ABL Agent, and the U.S. Trustee.  If a DIP Termination Declaration is delivered as provided above, the Debtors hereby consent to a hearing being held before this Court on an expedited basis and a motion shall be filed with the Court by the DIP Agent, at the direction of the Required Lenders, on at least five (5) business days' notice (subject to the Court's availability) (the "**Remedies Notice Period**"), and the Court may fashion an appropriate remedy upon a determination that an Event of Default has occurred, including lifting the automatic stay to be lifted to enable the DIP Agent to exercise rights and remedies against the DIP Collateral in accordance with this Final Order, the DIP Documents, the Prepetition ABL Documents, or applicable law.  Subject to the outcome of such hearing, the DIP Agent may then exercise all such rights and remedies to the extent permitted by the Bankruptcy Court.  The Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code or otherwise, to the extent that such relief would in any way impair or restrict the express rights and remedies granted to the DIP Agent and the DIP Secured Parties under this paragraph 24.

25.     Carve-Out.

(a)     As used in this Final Order, the term "**Carve-Out**" means the sum of the following: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate (without regard to the notice set forth in clause (iv) below); (ii) all reasonable fees, costs, and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iv) below);  (iii) to the extent allowed by the Court at any time, whether by interim or final compensation order, procedural order, or otherwise, all unpaid fees, costs, and expenses (collectively, the "**Allowed Professional Fees**") earned, accrued or incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (as defined below) and without regard to whether such Allowed Professional Fees are provided for in the Budget or when invoiced, but subject to the Investigation Budget Amount (as defined below) (the aggregate amounts set forth in clauses (i) through (iii) above, the "**Pre-Carve-Out Trigger Notice Cap**"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,750,000 incurred after the first business day following the date of delivery by the DIP Agent of the Carve-Out Trigger Notice in accordance with sub-paragraph (b) below (such date, the "**Trigger Date**"), to the extent allowed by the Court at any time, whether by interim or final compensation order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-**

**Carve-Out Trigger Notice Cap**" and, together with the Pre-Carve-Out Trigger Notice Cap, the "**Carve-Out Cap**"); *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in the Carve-Out Cap on any other grounds.

(b)      For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Loan Parties, Latham, the U.S. Trustee, counsel to the Committee (if any), counsel to the DIP Agent, counsel to the Prepetition ABL Agent and counsel to the Ad Hoc Noteholder Group, which notice shall expressly state that the Post-Carve-Out Trigger Notice Cap has been invoked, and which may be delivered only (i) following the occurrence and during the continuation of an Event of Default (as defined below) and (ii) acceleration of the obligations under the DIP Facility.

(c)      Upon delivery of a Carve-Out Trigger Notice in accordance with paragraph 25(b) above, such Carve-Out Trigger Notice shall constitute a demand to the Loan Parties to utilize all cash on hand as of such date and any available cash thereafter generated by the Debtors to fund the Escrow Account (as defined below) in an amount equal to the Carve-Out Cap and to hold such amount in trust to pay the obligations benefitting from the Carve-Out.

(d)      Upon delivery of a Carve-Out Trigger Notice in accordance with paragraph 25(b) above, and prior to the payment to any DIP Secured Party or Prepetition ABL Secured Party on account of any claim held by such person or entity (whether postpetition, adequate protection, prepetition, or otherwise), the Debtors shall deposit cash available on the Trigger Date (or available thereafter) in an aggregate amount equal to the Carve-Out Cap into a segregated account not subject to the control of the DIP Agent, any DIP Secured Party, or any Prepetition ABL Secured Party (the "**Escrow Account**").  The funds on deposit in the Escrow

Account shall only be available to satisfy the obligations set forth in the definition of Carve-Out in paragraph 25(a) above, and the DIP Agent, the DIP Secured Parties and the Prepetition ABL Secured Parties (x) shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of assets) of the Debtors to the extent necessary to fund the Escrow Account as provided above and (y) shall have a valid and perfected security interest upon any residual amount in the Escrow Account available following satisfaction in full in cash of all obligations benefiting from the Carve-Out as further described in clause (e) below.

(e)     All funds in the Escrow Account shall be used first to pay all obligations set forth in clauses (i) through (iii) of paragraph 25(a) above, until paid in full in cash, and then the obligations set forth in clause (iv) of paragraph 25(a) above.  If, after paying all amounts set forth in paragraph 25(a) above, the Escrow Account has not been reduced to zero, all remaining funds in the Escrow Account that are funded out of Prepetition ABL Collateral or proceeds thereof shall be distributed to the DIP Agent on account of the DIP Obligations.

(f)     For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Documents or the Prepetition ABL Documents, the Carve-Out shall be senior to (i) all liens and claims securing or arising under, with respect to, or in connection with the DIP Facility (including the DIP Superpriority Claims), (ii) all liens and claims securing or arising under, with respect to, or in connection with the Prepetition ABL Facility (including the ABL 507(b) Claims and any other superpriority administrative expense claims), and (iii) any other liens or claims otherwise arising under, with respect to, or in connection with the DIP Documents or the Prepetition ABL Documents (including adequate protection claims or liens related thereto).

(g)     Notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition ABL Documents, (i) the failure of the Escrow Account to satisfy in

full the Allowed Professional Fees shall not affect the priority of the Carve-Out, (ii) in no way shall any Budget, the Carve-Out, the Carve-Out Cap, the Escrow Account, any other budget or financial projection delivered in connection with the DIP Documents be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (including on an interim basis), (iii) the Debtors' authority to use proceeds from either DIP Facility, the DIP Collateral, and/or Cash Collateral solely on account of and to timely pay Allowed Professional Fees and the other obligations benefitting from the Carve-Out shall in no way be limited or deemed limited by any Budget, but the Carve-Out shall be subject to the Carve-Out Cap, and (iv) disbursements by the Debtors from the Escrow Account shall not constitute DIP Obligations or increase or reduce the balance of the DIP Superpriority Claims outstanding.  Without limiting the scope of the Carve-Out, none of the DIP Agent, the DIP Secured Parties or the Prepetition ABL Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases.  Without limiting the scope of the Carve-Out, nothing in this Final Order or otherwise shall be construed to obligate any of the DIP Agent, the DIP Secured Parties, or the Prepetition ABL Secured Parties in any way to directly pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Loan Parties have sufficient funds to pay such compensation or reimbursement.  Any payment or reimbursement made on or after the occurrence of the Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(h)      So long as the Trigger Date has not occurred, the Debtors shall be permitted to pay Allowed Professional Fees, including on an interim basis, and such payments shall not reduce nor be deemed to reduce the Carve-Out.

(i)     Proceeds from the DIP Facility not to exceed the Investigation Budget Amount may be used on account of Allowed Professional Fees and expenses of Committee Professionals in connection with the Investigation, which obligations will benefit from the Carve-Out in an amount not to exceed the Investigation Budget Amount solely to the extent unpaid as of the delivery of a Carve-Out Trigger Notice.

(j)     For the avoidance of doubt, if a DIP Repayment occurs or the DIP Facility is otherwise terminated, this Final Order shall remain in full force and effect, including with respect to the Debtors' use of Cash Collateral, the Carve-Out, and all related provisions in respect thereof, and the Prepetition ABL Agent shall assume any rights and obligations that the DIP Agent previously had with respect to the Carve-Out.

26.     Limitations on Use of DIP Proceeds, Cash Collateral, and Carve-Out.  No portion of the Carve-Out or any Cash Collateral may be used to (or support any other party to) litigate, object to, contest or challenge in any manner or raise any defenses to the debt, collateral position, liens or claims of any of the DIP Secured Parties, the DIP Agent or the Prepetition ABL Secured Parties, whether by challenging the validity, extent, amount, perfection, priority or enforceability of the indebtedness under the DIP Facility or the Prepetition ABL Credit Agreement, or the validity, extent, perfection, priority or enforceability of any mortgage, security interest or lien with respect thereto or any other rights or interests or replacement liens with respect thereto or any other rights or interests of any of the DIP Secured Parties, the DIP Agent, or the Prepetition ABL Secured Parties, or by seeking to subordinate (other than to the Carve-Out) or recharacterize the DIP Facility (or amounts outstanding thereunder) or the Prepetition ABL Credit Agreement (or amounts outstanding thereunder), or to disallow or avoid any claim, mortgage, security interest, lien, or replacement lien or by asserting any claims or causes of action, including, without

limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the DIP Secured Parties, the DIP Agent or the Prepetition ABL Secured Parties, or any of their respective officers, directors, agents, or employees, in each case in their respective capacities as such; *provided*, *however*, that the Carve-Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 (the "**Investigation Budget Amount**") incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority, or extent of the Prepetition ABL Liens (the "**Investigation**") before the Challenge Deadline (as defined below). In addition, neither the Carve-Out nor any Cash Collateral shall be used in connection with (a) preventing, hindering or delaying any of the DIP Secured Parties', the DIP Agent's, or the Prepetition ABL Secured Parties' enforcement or realization upon the DIP Collateral or the exercise of rights by the DIP Agent or the Prepetition ABL Agent once an Event of Default has occurred and is continuing, (b) using or seeking to use Cash Collateral or selling or otherwise disposing of the DIP Collateral other than as provided herein, (c) using or seeking to use any insurance proceeds related to the DIP Collateral without the consent of the DIP Agent or the Prepetition ABL Agent; (d) incurring Indebtedness (as defined in the DIP Agreement) other than in accordance with the Budget or other than as permitted in the DIP Documents; or (e) except as provided in the Budget, paying any amount on account of any claims arising before the Petition Date; *provided*, that the foregoing limitations shall not prevent the Loan Parties and their professionals from being heard on whether an Event of Default has occurred and is continuing.

27.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  Based on the findings set forth in the Interim Order and this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section

364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court of competent jurisdiction, the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby, unless such authorization and the incurring of such debt, or the granting of such priority or lien, is stayed pending appeal.

28. <u>Payment of Fees and Expenses</u>.  The Debtors shall pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the DIP Agent and the DIP Secured Parties in connection with the DIP Facility, as provided in the DIP Documents, and of the Prepetition ABL Agent and Prepetition ABL Secured Parties and Ad Hoc Noteholder Group Advisors as provided in this Order.  Any time that professionals of the DIP Agent and the DIP Secured Parties, including, without limitation, Simpson Thacher, FTI, and any local counsel for the DIP Agent and the DIP Secured Parties (such professionals, the "**DIP Party Advisors**"), seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) by electronic mail to the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, and counsel to the Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the

Debtors.  The Debtors, any Committee, the U.S. Trustee, or the Ad Hoc Noteholder Group may dispute the payment of any portion of such invoiced fees and expenses (the "**Disputed Invoiced Fees**") if a Debtor, any Committee that may be appointed in these Chapter 11 Cases, the U.S. Trustee, or the Ad Hoc Noteholder Group (i) first, notifies the submitting party in writing, within seven (7) days of the receipt of such fee and expense statement or invoice, setting forth the specific objections to the Disputed Invoiced Fees and requesting to meet and confer promptly upon such Disputed Invoiced Fees, and (ii) second, to the extent such conference does not resolve all Disputed Invoiced Fees, then files with the Court a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or other pleading.  The Debtors shall promptly pay in full all such invoiced fees and expenses other than the Disputed Invoiced Fees.  No attorney or advisor to the DIP Agent or to the DIP Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors (i) to the DIP Agent or DIP Secured Parties in connection with the DIP Facility, (ii) to the Prepetition ABL Secured Parties, and (iii) to the Prepetition Senior Noteholders, subject to any Challenge and in connection with the Chapter 11 Cases, are hereby approved in full.

29.    Recharacterization.  In the event that it is determined by a final order that the Prepetition ABL Secured Parties are not entitled to the payment of some or all of the interest payments required by paragraph 11(c) of this Final Order as adequate protection for the Diminution in Value of their interests in the Prepetition ABL Collateral and the Prepetition ABL Secured Parties are determined to be undersecured or unsecured, then such interest payments shall be applied as a payment made to be applied to the principal balance of such Prepetition ABL

Secured Parties' secured claims or such other relief as the Court may fashion pursuant to such final order.

30.    <u>Proofs of Claim</u>.  The DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent and the Prepetition ABL Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition ABL Agent is authorized, in its sole discretions, to file in the Debtors' lead chapter 11 case *In re Superior Energy Services, Inc.,* Case No. 20-35812 (DRJ), a master proof of claim on behalf of their Prepetition ABL Secured Parties on account of any and all of their claims arising under the Prepetition ABL Documents and hereunder (as applicable) (each, a "**Master Proof of Claim**") against each of the Debtors.  Upon the filing of any such Master Proof of Claim, the Prepetition ABL Agent shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims of any type or nature whatsoever with respect to the applicable Prepetition ABL Documents, and the claim of each applicable Prepetition ABL Secured Party (and each of its successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition ABL Secured Parties.  Any proof of claim filed by the Prepetition ABL Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Secured Parties.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to (i)

the DIP Agent or the DIP Secured Parties, or (ii) the Prepetition ABL Secured Parties with respect to the Prepetition ABL Obligations.

31.    <u>Effect of Stipulations on Third Parties</u>.

(a)    *Generally*.  The Debtors' Stipulations are binding on the Debtors, any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected after the Challenge Deadline (as defined below) for any of the Debtors or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.  The Debtors' Stipulations shall also be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, a Committee (if appointed) and any other person or entity acting or seeking to act on behalf of the Loan Parties' estates in all circumstances and for all purposes, unless (i) the Committee or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the Challenge Deadline) has timely commenced an appropriate proceeding or contested matter required under the Bankruptcy Code, Bankruptcy Rules and Local Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 31) by the Challenge Deadline challenging any of the Debtors' Stipulations with respect to the Prepetition ABL Obligations (each such proceeding or contested matter, a "**<u>Challenge</u>**") and (ii) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge; *provided*, that any pleadings filed in any Challenge shall set forth with specificity the basis for such Challenge (and any Challenges not so specified prior to the Challenge Deadline shall be deemed forever, waived, released and barred). The Court may fashion any appropriate remedy following a successful Challenge.

(b)      If any such Challenge is timely and properly filed prior to the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive (as provided in paragraph 31(a) hereof) on the Committee (if appointed) and on any other person or entity, the Loan Parties and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Loan Parties in the Chapter 11 Cases or any Successor Cases), except to the extent that such Debtors' Stipulations were expressly and successfully challenged by such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  If any such Challenge is timely and properly filed prior to the Challenge Deadline and remains pending and the Chapter 11 Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such Challenge on behalf of the Debtors' estates; *provided*, that if the Challenge Deadline has elapsed and no timely and properly filed Challenge has been commenced either before or after conversion of the Chapter 11 Cases to chapter 7 cases, or any Challenge has been resolved prior to the conversion of the chapter 11 Cases to chapter 7 cases, the chapter 7 trustee shall be bound by the Debtors' Stipulations or such resolution, as applicable.

(c)      The "**Challenge Deadline**" shall mean the earlier of (1) the date of confirmation of a plan of reorganization or (2) (i) as to the Committee, if any, 60 days from the date of the formation of the Committee (if appointed) and (ii) for any other party in interest, 75 days following the entry of the Interim Order, as such deadline may be extended (x) in writing prior to the expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time in the sole discretion of the Prepetition ABL Agent, or (y) by this Court for good cause shown pursuant to an application filed and served by a party in interest prior to the expiration of the Challenge Deadline.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if appointed) or any non-statutory

committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Debtors' Stipulations, and all rights to object to such standing are expressly reserved.  Notwithstanding anything to the contrary in this Final Order, (i) the filing of a motion by the Committee seeking standing to assert a Challenge before the Challenge Deadline that attaches a proposed Challenge shall extend the Challenge Deadline with respect to the Committee until two (2) business days after the Court rules on the standing motion, or such other time period ordered by the Court in approving the standing motion and (ii) if, prior to the Challenge Deadline, (x) the Chapter 11 Cases convert to chapter 7, or (y) if a chapter 11 trustee is appointed, then, in each such case, the Challenge Deadline shall be extended, solely with respect to such trustee, until the later of the Challenge Deadline and thirty (30) calendar days after such trustee's appointment.

(d)     *Binding Effect*.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such Challenge does not result in a final and non-appealable judgment or order that is inconsistent with any of the Debtors' Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Debtors' Stipulations shall, pursuant to this Final Order, become irrevocably binding on any person, entity, or party in interest in the Chapter 11 Cases, as well as their successors and assigns, and in any Successor Case for all purposes and shall not be subject to further challenge or objection.  Notwithstanding anything to the contrary herein, if any Challenge is properly and timely commenced by a party in interest, the Debtors' Stipulations shall nonetheless remain binding on all other parties in interest.  For the avoidance of doubt, initiation of a timely and procedurally proper Challenge shall preserve the

Challenge only with respect to the party initiating such Challenge (and such Challenge shall be limited to the Challenge identified with specificity prior to the expiration of the Challenge Deadline).  To the extent any Challenge is timely and properly commenced and is unsuccessful, the Prepetition ABL Secured Parties shall be entitled to, as adequate protection, payment of the related costs and expenses, including, but not limited to, reasonable and documented attorneys' fees, incurred in defending themselves against any unsuccessful Challenge.

32.     <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

33.     <u>Section 506(c) Claims</u>.  Except to the extent of the Carve-Out, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent, the DIP Collateral, or the Prepetition ABL Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent or the Prepetition ABL Agent, as applicable, and no such consent shall be implied from any action, inaction, or acquiescence by any party.

34.     <u>Payment of Ad Hoc Noteholder Group Professional Fees</u>.  So long as the Restructuring Support Agreement (as defined below) has not been terminated, the Debtors are authorized to pay in cash when due all accrued and unpaid fees and reasonable and documented expenses and disbursements (the "**Ad Hoc Noteholder Group Professional Fees**") incurred by the advisors (the "**Ad Hoc Noteholder Group Advisors**") to the Ad Hoc Noteholder Group, including Davis Polk & Wardwell LLP, Porter Hedges LLP, and Evercore Group L.L.C., as counsel, co-counsel, and financial advisor, respectively, in each case whether accrued before, on,

or after the Petition Date, regardless of whether such amounts are in the Budget, and as are otherwise owed and payable pursuant to that certain Amended and Restated Restructuring Support Agreement, dated as of December 4, 2020 (as amended, restated, modified or supplemented from time to time, the "**Restructuring Support Agreement**"), by and among (i) the Company, (ii) each direct and indirect wholly-owned, domestic subsidiary of the Company party thereto, and (iii) certain holders of the Prepetition Senior Notes, all subject to the procedures set forth in paragraph 28.

35.     No Marshaling/Applications of Proceeds.  In no event shall the DIP Agent, the DIP Secured Parties, or the Prepetition ABL Agent or Prepetition ABL Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition ABL Collateral.

36.     Section 552(b).  The Prepetition ABL Agent and Prepetition ABL Secured parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to any of them.

37.     DIP Released Parties.  The Debtors hereby absolutely and unconditionally release and forever discharge and acquit the DIP Agent and the DIP Secured Parties and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, each in such capacity (collectively, the "**DIP Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions,

suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type (in each case, arising on or prior to the date of this Final Order), whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, in each case, arising in connection with or relating to the DIP Facility, the DIP Liens or any of the DIP Documents; *provide*d, that nothing herein shall relieve the DIP Released Parties from fulfilling their obligations under the DIP Documents and/or this Final Order.

38.     <u>Limits on Lender Liability</u>.  Nothing in the Interim Order, this Final Order, any of the DIP Documents, any of the Prepetition ABL Documents, any of the Prepetition Senior Notes Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition Senior Notes Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases.  The DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent, the Prepetition ABL Secured Parties, or the Prepetition Senior Notes Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Final Order or the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition

upon the DIP Agent, any of the DIP Secured Parties, the Prepetition ABL Agent, any of the Prepetition ABL Secured Parties or any of the Prepetition Senior Notes Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

39.    _Insurance Proceeds and Policies_.  As of the date of the entry of the Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Secured Parties) and the Prepetition ABL Agent (on behalf of the Prepetition ABL Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

40.    _Joint and Several Liability_.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Documents.

41.    _Rights Preserved_.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, the DIP Secured Parties', the Prepetition ABL Agent and/or the Prepetition ABL Secured Parties' rights to seek any other or supplemental relief; (b) any of the rights of any of the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent, the Prepetition ABL Secured Parties and/or the Prepetition Senior Notes Parties under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay imposed by section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or

(iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent, the Prepetition ABL Secured Parties and/or Prepetition Senior Notes Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.  Entry of this Final Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in these Chapter 11 Cases or any Successor Cases.

42.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent or the Prepetition ABL Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition ABL Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent or the Prepetition ABL Secured Parties.

43.     <u>Binding Effect of Final Order</u>.  Immediately upon entry on the docket of this Court, the terms and provisions of this Final Order shall become binding upon the Debtors, the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent, Prepetition ABL Secured Parties, all other creditors of any of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the

Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

44.    <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition ABL Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors shall be prohibited from seeking or consenting to, directly or indirectly, any modification, stay, vacatur, or amendment to this Final Order without the prior written consent of the DIP Agent and the Prepetition ABL Agent, and no such consent shall be implied by any action or inaction of the DIP Agent or the Prepetition ABL Agent.

45.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Final Order, the provisions of this Final Order shall control.

46.    <u>Discharge</u>.  The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, including the cash collateralization of any DIP Letters of Credit (other than contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility), on or before the Effective Date (as defined in the DIP Agreement), or each of the DIP Agent, the DIP Secured Parties, and the Prepetition ABL Agent has otherwise agreed in writing; *provided*, that the DIP Letters of Credit

shall automatically convert into a senior asset-based revolving exit loan upon the satisfaction of the conditions listed on Schedule 2.26 of the DIP Agreement (the "**Exit Facility**" and such letters of credit, "**Exit Letters of Credit**").

47.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or any Successor Cases.  The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases notwithstanding the entry of any orders described in clauses (a)-(d) above, and all claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Secured Parties, the Prepetition ABL Agent and the Prepetition ABL Secured Parties pursuant to this Final Order and/or the DIP Documents shall maintain their validity and priority as provided by this Final Order until: (i) in respect of the DIP Facility, all the DIP Obligations have been indefeasibly paid in full in cash, including the cash collateralization of any Letters of Credit (other than contingent indemnification obligations for which no claim has been asserted and DIP Letters of Credit deemed converted to Exit Letters of Credit under the Exit Facility); and (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations have been indefeasibly paid in full in cash, including the cash collateralization of any Letters of Credit (other than contingent indemnification obligations for which no claim has been asserted and Prepetition Letters of Credit deemed converted to DIP Letters of Credit under the DIP Facility).  The terms and provisions concerning the indemnification of the DIP Agent and the DIP Secured Parties shall continue in the Chapter 11

Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

48.     Replacement Agent.   Notwithstanding the resignation or replacement of any collateral agent or administrative agent, including the DIP Agent, the DIP Liens on the DIP Collateral shall remain continuously and properly perfected, notwithstanding the transfer of control, possession, or title of any Prepetition ABL Collateral or DIP Collateral to a new collateral or administrative agent.

49.     Headings.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

50.     Retention of Jurisdiction.   The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Final Order.

**Signed:  January 19, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**